UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**MATTHEW VANN,**

      **Plaintiff,**            **CIVIL ACTION NO. 08-10505**

   vs.

                            **DISTRICT JUDGE SEAN F. COX**

**COMMISSIONER OF**       **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

      **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

**I.   RECOMMENDATION:** This Court recommends that Defendant's Motion for Summary Judgment (docket no. 14) be GRANTED, that Plaintiff's Motion for Summary Judgment (docket nos. 11, 12) be DENIED, and that Plaintiff's Complaint be DISMISSED, as the ALJ's decision is supported by substantial evidence.

\*\*\*

**II.   PROCEDURAL HISTORY:**

Plaintiff filed an application for Disability Insurance benefits, a period of Disability and Supplemental Security Income on June 29, 2005, alleging that he had been disabled and unable to work since December 1, 2004 due to arthritis in his knees. (TR 11, 51-57, 63-64). The Social Security Administration denied benefits. (TR 37-43). A requested *de novo* hearing was held on February 15, 2007 before Administrative Law Judge (ALJ) Jerome B. Blum who subsequently found that the claimant was not entitled to a period of disability or Disability Insurance Benefits or eligible for Supplemental Security Income because he was not under a disability at any time through the date

of the ALJ's July 13, 2007 decision. (TR 11, 16, 141). The Appeals Council declined to review the ALJ's decision and Plaintiff commenced the instant action for judicial review. (TR 3-5). The parties filed Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

## III.     PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE AND VOCATIONAL EXPERT TESTIMONY

### A.     Plaintiff's Testimony

Plaintiff was 38 years old at the time of his alleged onset of disability and 41 years old at the time of the hearing. (TR 143-44). Plaintiff has a tenth grade education and reports difficulty reading. (TR 63-64, 67, 70). Plaintiff has past work experience as a cook, a shipping and receiving clerk and with a variety of temporary jobs. (TR 64, 67, 144). Plaintiff reported that he stopped working on December 1, 2004 due to pain in his knees. (TR 64, 145). Plaintiff testified that he has swelling and constant pain in his knees; some mornings his knees swell so much he can hardly get out of bed. (TR 145-46). If he sits for a long period of time the knees get stiff and if he stands too long they hurt. (TR 146, 150). Plaintiff testified that he can sit comfortably for about thirty minutes and stand comfortably for about an hour. (TR 151). Plaintiff testified that he can walk about a block. (TR 157). In August 2005 Plaintiff reported that he could walk about one mile before he has to stop and rest. (TR 85). Plaintiff testified that he cannot perform a job with a sit/stand option because approximately five times per week he gets so stiff that he needs help to stand up. (TR 151).

Plaintiff lives in an upper flat with his two granddaughters and a grandchild. (TR 146). Plaintiff testified that he is raising his daughters since their mother passed away in February 2005. (TR 146). Plaintiff gets up at 5:30 a.m. each day to get his children ready for school. (TR 150). Plaintiff is able to perform his own personal care tasks and prepare meals daily for himself and his

family, including cooking. (TR 82, 150). During the day Plaintiff takes his medications and watches television. (TR 150). Plaintiff is able to grocery shop for an hour, clean the house and do the laundry. (TR 83, 154). Plaintiff children also clean the house. (TR 154). Plaintiff testified that he goes up and down the stairs to his apartment about twice a day. (TR 155). He has friends who come by to see him and when the weather is nice he goes outside and sits on the porch. (TR 155). He used to enjoy playing basketball but he cannot play anymore. (TR 84, 155).

Plaintiff testified that it has not been recommended to him to have surgery for his knees. (TR 147). Plaintiff testified that his medications result in dizziness and an irritable bowel. (TR 148). Plaintiff also testified that his high blood pressure sometimes makes him dizzy. (TR 156). Plaintiff testified that he does not have a driver's license or a car so he does not drive, otherwise he could have driven himself to the hearing. (TR 158).

Plaintiff testified that after his daughters' mother died in February 2005 he had problems with depression and sleeping. (TR 152-53). His doctor prescribed medication to help him sleep and it is effective. (TR 153). Plaintiff also testified that he was prescribed medication for his depression. (TR 153). Plaintiff testified that due to his depression he has problems coping with some of his daughters' problems. (TR 153-54). Plaintiff testified that his depression increased when his mother and father-in-law passed away in 2007. (TR 154).

In a Disability Report Appeal in October 2005 Plaintiff reported that he had been depressed and "stressed out" since August 2005 and that the depression was a new condition since he had completed the last disability report. (TR 88). In a Disability Report dated October 20, 2006 the only condition which Plaintiff reported as limiting his ability to work was arthritis in his knees. (TR 63).

**B.      Medical Evidence**

The Plaintiff's sole challenge on appeal is to the ALJ's findings relating to his mental impairments. (Docket no. 11). The Court has reviewed the entire record. *See Heston v. Comm'r of Social Sec.*, 245 F.3d 528, 535 (6th Cir. 2001) ("Judicial review of the Secretary's findings must be based on the record as a whole."). The discussion of medical evidence, however, will be limited with respect to Plaintiff's knees and will focus primarily on Plaintiff's depression.

Plaintiff reported that he had treated with Anthony W. C. Fairclough, M.D., since 2000 for arthritis in his knees and high blood pressure. (TR 90, 127). In June 2000 Plaintiff complained of right knee pain and x-rays suggested "early degenerative changes involving the medial compartment" but no other abnormalities. (TR 127). In May 2005 Dr. Fairclough completed a General Medical Examination Report in which he noted all examination areas as "normal" and diagnosed only Plaintiff's arthritis of the knees as resulting in limitations. (TR 111). Plaintiff's hypertension did not result in limitations. (TR 111). Dr. Fairclough noted that Plaintiff was limited in his kneeling and standing and the condition was "substantially reduced by treatment" yet Plaintiff was not physically able to enter employment. (TR 111).

In August 2005 Plaintiff was evaluated by state agency physician Asit K. Ray, M.D., for arthritis in his knees. (TR 112-11). Dr. Ray noted that Plaintiff's chief complaint was pain in both knees with occasional swelling. (TR 112). Dr. Ray also noted that Plaintiff "says he has no other problem except the knees." (TR 112). Dr. Ray noted significant swelling of the knees and range of motion "almost within the normal limit." (TR 114). An x-ray of the right knee was "[e]ssentially negative" and an x-ray of the left knee showed "possible arthritic changes." (TR 115).

On September 9, 2005 Judith Willis, a state agency single decision maker, completed a Physical Residual Functional Capacity Assessment based on Plaintiff's arthritis of the knees. (TR

4

100-07). Ms. Willis concluded that Plaintiff can occasionally lift up to twenty pounds, frequently lift up to ten pounds, stand and/or walk for about six hours of an eight-hour day, sit about six hours of an eight-hour workday and was unlimited in his ability to push and/or pull, including the operation of hand and foot controls. (TR 101). Plaintiff was limited to occasional climbing, kneeling, crouching and crawling and is unlimited in his ability to balance and stoop. (TR 102).

In September 2005 Dr. Fairclough noted that Plaintiff has stress as a result of death of his ex-wife and his daughter having a baby. (TR 125). The record shows that from November 2005 through September 2006 Dr. Fairclough prescribed Zoloft and Buspar. (TR 119-25). Dr. Fairclough also prescribed Indomethacin for arthritis and Diovan for high blood pressure. (TR 66, 121-25). On September 19, 2006 Plaintiff saw Michael J. Fugle, D.O., orthopedic surgery, for complaints of bilateral knee swelling. (TR 120). X-rays of both knees were "essentially negative" and Dr. Fugle concluded that Plaintiff had bilateral knee pain and a torn meniscus in the bilateral knees. (TR 120).

On April 9, 2007 Plaintiff submitted an unsigned, undated letter from Anthony Fairclough, M.D., to Plaintiff's attorney in which Dr. Fairclough stated that Plaintiff has been a patient since June 22, 2000 and has been diagnosed with and is being treated for chronic obstructive lung disease, degenerative arthritis and depression/anxiety. (TR 131, 132). Dr. Fairclough stated that Plaintiff makes regular scheduled office visits and his last visit was March 6, 2007. (TR 131, 132).

### C. Vocational Expert Testimony

The Vocational Expert (VE) classified Plaintiff's past work in food preparation as unskilled and light, his temporary service work in labor jobs as unskilled and ranging from light to medium, and his work in shipping and receiving as unskilled and heavy. (TR 158). The ALJ asked the VE to assume that Plaintiff could not perform any job that required continuous standing. (TR 158). The ALJ also asked the VE whether there were any sedentary unskilled bench jobs available with a

sit/stand option. (TR 158). The VE testified that there are 6000 such jobs, including medical and optical inspection, hand assembly of medical equipment, sorting jobs in food and assembly and sorter jobs in plastics, available in Michigan. Three thousand such jobs are available in southeast Michigan and over 100,000 such jobs are available in the economy. (TR 159). The VE testified that these jobs appear in the Dictionary of Occupational Titles where they are listed as sedentary jobs, however, they are not listed with a sit stand option. (TR 159). The ALJ then asked the VE to consider Plaintiff's testimony that he can stand for an hour and sit for thirty minutes and whether these jobs could be performed while alternating these positions throughout an eight-hour workday. (TR 159). The VE testified that he could perform the jobs. (TR 159). The VE agreed with the ALJ that Plaintiff would be unemployable if he were dizzy and needed to use the bathroom three to six times per day, as he testified were the side effects of his medication. (TR160). The VE agreed with the ALJ that the jobs would also be precluded if the hypothetical individual had severe depression that resulted in "staying around the house, difficulty making simple routine judgments [and] performing simple routine tasks." (TR 160).

## IV.     ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff met the disability insured status requirements from December 1, 2004 through the July 13, 2007 date of decision, had not engaged in substantial gainful activity since 2004, suffered from early degenerative arthritis of the knees, hypertension controlled with medication, chronic obstructive lung disease and depression, but he does not have an impairment or combination of impairments equal to the Listing of Impairments. (TR 15). The ALJ found that Plaintiff is unable to perform his past relevant work but concluded that he has the residual functional capacity to perform a limited range of unskilled sedentary work requiring a sit/stand option and was capable of performing a significant number of jobs in the economy. (TR 15-16). Therefore, he was

not suffering from a disability under the Social Security Act at any time through the date of the ALJ's July 13, 2007 decision. (TR 16).

## V.  LAW AND ANALYSIS

### A.  Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Commissioner*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the

decisionmakers can go either way, without interference by the courts").

### B.     Framework For Social Security Disability Determinations

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)     he was not presently engaged in substantial gainful employment; and

(2)     he suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     he did not have the residual functional capacity to perform his relevant past work.

*See* 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). If Plaintiff's impairments prevented him from doing his past work, the Commissioner, at step five, would consider his residual functional capacity ("RFC"), age, education and past work experience to determine if he could perform other work. If he could not, he would be deemed disabled. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C.     Analysis

Plaintiff's sole argument on appeal is that the ALJ failed to evaluate Plaintiff's mental impairments in accordance with the technique set forth in 20 C.F.R. sections 404.1520a and 416.920a. (Docket no. 11). With respect to his mental impairments, Plaintiff argues that Dr.

8

Fairclough's note stating that Plaintiff suffers from depression and anxiety is supported by clinical evidence and Plaintiff's testimony that the medications Zoloft, Buspirone and Sertraline[1] make him dizzy and after he takes the medications he sits in a chair and reads and the ALJ's statement that "claimant has maintained good social functioning" is not accurate.  (Docket no. 11).  Plaintiff also argues that he should have been evaluated by a psychiatrist to determine the severity of his mental impairment.  (Docket no. 11).

The Commissioner has prescribed rules for evaluating mental impairments.  *See* 20 C.F.R. §§ 404.1520a, 416.920a.  The Commissioner first determines whether there is a medically determinable mental disorder specified in one of nine diagnostic categories.  *See id.*; 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A.  Thereafter, the Commissioner measures the severity of a mental disorder in terms of functional restrictions, known as the "B" criteria, by determining the frequency and intensity of the deficits.

The "B" criteria require an evaluation in four areas with a relative rating for each area.  *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).  The Commissioner must evaluate limitations in activities of daily living, social functioning and concentration, persistence, or pace and rate those on a five-point scale ranging between none, mild, moderate, marked, and extreme.  The fourth area is deterioration or decompensation in work or work-like settings and calls for a rating of never, one or two, three, and four or more.  "The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity."  20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4).  The regulations also provide that a degree of limitation in the first three functional

---

[1] Plaintiff refers to "Sertziline" in his brief.  (Docket no. 11 at 5 of 7).  The record does not show evidence of "Sertziline," however, there is evidence of "Sertraline," an antidepressant with the trade name "Zoloft."  (TR 120).

9

areas rated as "none" or "mild" and "none" in the fourth area will generally result in a conclusion that the claimant's "impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities." 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

The ALJ followed the technique set forth in 20 C.F.R. sections 404.1520a and 416.920a and incorporated those findings into his written decision. *See* 20 C.F.R. §§ 404.1520a(e)(2), 416.920a(e)(2). (TR 13). The ALJ concluded that Plaintiff's depression and anxiety present "no significant impairment" on his activities of daily living, social functioning and ability to take on and complete tasks in a timely manner. (TR 14). The ALJ found that there is no evidence that the depression and anxiety have an impact on Plaintiff's ability to focus and maintain concentration and there is no evidence of episodes of decompensation. (TR 14). Although the ALJ followed the technique, he failed to use the terminology set forth in 20 C.F.R. sections 404.1520a and 416.920a for rating the degree of limitation in each area. The ALJ's concluded in response to the first three functional areas that Plaintiff has no limitations, as evidenced by the ALJ's repeated findings that Plaintiff did not report difficulties in these areas and the record did not show difficulties in these areas. (TR 13-14). Similarly, the ALJ pointed out that the record shows no episodes of decompensation.

In certain cases, courts have held that the failure to complete the Psychiatric Review Technique Form was harmless. *See Cakora v. Barnhart*, 67 Fed. Appx. 983, 985 (8th Cir. 2003); *Robinson v. Barnhart*, 124 Fed. Appx. 405, 411 (6th Cir. 2005) ("The ALJ's failure to complete a Psychiatric Review Technique Form can constitute reversible error, . . . but in the Sixth Circuit, reversal is warranted only if the plaintiff shows 'significant evidence of a possible impairment that allegedly prevented the Plaintiff from working.'" *Id.* (citations omitted)); *Marcum v. Comm'r of*

10

*Social Sec.*, 2000 U.S. App. LEXIS 787 at *13 (6th Cir. Jan. 18, 2000) ("Plaintiff relies upon several cases from other circuits in which the courts found the ALJ had failed to follow the proper procedures in evaluating a potential mental impairment. We find those cases distinguishable because they involved significant evidence of a possible mental impairment that allegedly prevented the claimant from working."). This is a not a case in which the ALJ failed to engage in the evaluation of Plaintiff's mental impairment. The ALJ performed the evaluation but failed to use the language for ratings set forth in the regulations. There is little evidence supporting the ALJ's conclusion that Plaintiff suffers from depression and there is no evidence that the depression or anxiety causes any limitation affecting Plaintiff's ability to work. Even if this case were remanded so that the ALJ could engage in the same evaluation and apply the term(s) set forth in the regulations, there is no evidence in the record to support a finding other than "none" in the four areas of evaluation. The Court finds that the ALJ's failure to use the rating language set forth in the regulations was harmless error.

The ALJ's findings with respect to Plaintiff's mental impairments are supported by substantial evidence. For each of the functional areas of evaluation, the ALJ set forth examples from the record which support his findings. (TR 13-14). Even Plaintiff admits that "[t]he Administrative Law Judge documented the application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described in 20CFR404.1520a(c) (sic)." (Docket no. 11 at 5).

Plaintiff next argues that the ALJ erred in finding that there was no clinical evidence to support Dr. Fairclough's diagnoses or "depression/anxiety" because the record shows that Dr. Fairclough has prescribed antidepressants to Plaintiff since November 2005. (TR 131, 132). The ALJ properly considered Dr. Fairclough's undated unsigned note which states Plaintiff suffers from

11

"[d]epression/anxiety." (TR 131, 132). Although the medications were not addressed in Dr. Fairclough's undated note, the prescribed medications appear in the record and the ALJ considered them, as evidenced by the reference to them in his decision. (TR 13). The ALJ noted that "Dr. Fairclough's note indicates that the claimant suffers from depression and anxiety treated with antidepressant medication." (TR 13). The ALJ is otherwise correct in concluding that the diagnosis of depression and anxiety is not supported by objective diagnostic testing or clinical evidence of any kind. There is no indication that Dr. Fairclough is a psychiatrist or psychologist and in fact, Dr. Fairclough had historically treated Plaintiff's arthritis of the knees. (TR 110-11). There is no evidence that Dr. Fairclough's diagnosis of "[d]epression/anxiety" and the associated prescriptions are based on anything other than Plaintiff's subjective complaints. The prescriptions for Zoloft and Buspar are the only evidence, aside from Dr. Fairclough's note and Plaintiff's own assertions, that Plaintiff suffers from depression and or anxiety. The ALJ credited this evidence to the extent that the ALJ concluded that Plaintiff suffers from depression. There is no evidence of greater limitations than those findings made by the ALJ.

Plaintiff also argues that the ALJ did not properly credit his testimony that his medications make his dizzy and that after he takes them he sits in a chair and watches television. (Docket no. 11, TR 149). Plaintiff points to no evidence to support his testimony. A review of the record discloses that Plaintiff never complained to his doctors about the side effects of his medications, nor did he mention his need to sit up and watch television after taking his medications. When the ALJ made his findings regarding Plaintiff's RFC, he found that Plaintiff's disabling symptoms of depression and anxiety were not wholly credible and are inconsistent with Plaintiff's activities of

12

daily living[2]. As pointed out by the ALJ, the claimant's daily activities undermined his claim that he remains totally disabled. As set forth above, the ALJ went through the areas of functioning and discussed examples from the record in areas where Plaintiff has no limitations, including that Plaintiff lives in an upper floor flat, is able to take care of his own personal needs as well as raise his children, shop and cook multi-course meals. (TR 13, 82, 146, 150, 154-55). In view of that evidence, the ALJ could reasonably conclude that Plaintiff's subjective complaints of totally disabling symptoms resulting from his depression were not entirely credible.

Plaintiff also argues that the ALJ's conclusion that Plaintiff maintains "good social functioning" is "inaccurate" because he does not drive, testified that his children clean the house and he does not get out to socialize. (Docket no. 11). Contrary to Plaintiff's assertion, substantial evidence exists in the record to support the ALJ's finding that Plaintiff has maintained good social functioning and that his "symptoms present no significant impairment of his social functioning." (TR 14). Plaintiff specifically testified that he does not drive because he does not have a car or a driver's license, not due to his impairments or lack of an ability to drive. (TR 158). Plaintiff is able to go grocery shopping when someone takes him to the store, he is able to use public transportation and he sits outside on his porch to socialize in good weather. (TR 83, 154, 155). Plaintiff reported that he does not have problems getting along with family, friends and neighbors and he gets along well with authority figures. (TR 85-86). Plaintiff spends time on the phone with others and he plays games. (TR 84). He also reported attending church and a social group for about two hours per day. (TR 84). The ALJ's findings with respect to Plaintiff's social functioning are supported by substantial evidence in the record.

---

[2] Plaintiff has not challenged on appeal the ALJ's findings regarding his credibility, therefore that issue is not before the Court.

Finally, Plaintiff argues that the he "should have been evaluated by a psychiatrist to determine whether his psychiatric disability resulted in a mild, moderate or severe impairment as required by 20 C.F.R. 404.1520a." (Docket no. 11). The Plaintiff bears the burden of proving that he is disabled. *See Foster v. Halter*, 279 F.3d 348, 353-54 (6th Cir. 2001). "An ALJ has the discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *See id.* at 355; 20 C.F.R. §§ 404.1517, 416.917. As set forth above, there is no evidence in the record to support limitations relating to a mental impairment and no objective diagnostic testing or clinical evidence of a mental impairment. (TR13). *See King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984) (The ALJ's finding that impairment did not meet the Listing of Impairments was supported by substantial evidence where there was no evidence of a necessary symptom); *see also Foster*, 279 F.3d at 354. The ALJ did not err in failing to provide a psychiatric evaluation for Plaintiff. The ALJ's findings are supported by substantial evidence as set forth herein[3].

## **CONCLUSION**

The ALJ's decision to deny benefits was within the range of discretion allowed by law, it is supported by substantial evidence and there is simply insufficient evidence to find otherwise. Defendant's Motion for Summary Judgment (docket no. 14) should be granted, that of Plaintiff (docket no. 11, 12) denied and the instant complaint dismissed.

---

[3]Although not raised on appeal it is worth noting that the ALJ's decision at step five was supported by substantial evidence. The ALJ properly referenced the regulations, Pt. 404, Subpt. P, App. 2, Rule 201.24 and 20 C.F.R. §§ 404.1569 and 416.969 which would direct a conclusion of "not disabled" and further relied on the VE's testimony to determine what effect Plaintiff's non-exertional limitations, including the need for a sit/stand option, would have on the number of jobs available in the economy. In a hypothetical question posed to the VE, an ALJ is required to incorporate only those limitations which he finds credible and supported by the record. *See Casey v. Sec'y of Health and Human Serv.*, 987 F.2d 1230, 1235 (6th Cir. 1993). The ALJ found that Plaintiff's allegations were not wholly credible and properly included the limitations he found credible.

**REVIEW OF REPORT AND RECOMMENDATION**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: February 05, 2009           s/ Mona K. Majzoub
                                   MONA K. MAJZOUB
                                   UNITED STATES MAGISTRATE JUDGE


**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: February 05, 2009           s/ Lisa C. Bartlett
                                   Courtroom Deputy